IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAMES COOPER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:09-CV-1302-BF |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before United States Magistrate Judge Paul D. Stickney. James Cooper ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his claims of for Child's Insurance Benefits ("CIB") based on disability under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. The Court has considered Plaintiff's Brief, filed January 13, 2010, and Defendant's Brief, filed January 29, 2010. The Court has reviewed the parties' evidence in connection with the pleadings and hereby orders that the Commissioner's decision be REVERSED and REMANDED for reconsideration in line with this opinion.

**I. BACKGROUND**[1]

*A. Procedural History*

Plaintiff filed applications for CIB and SSI on March 21, 2007, claiming a disability onset date of December 12, 2006. (Tr. 8; 102-04; 106-11.) In his applications, Plaintiff alleged disability due to a spinal cord injury, brain bleeding, a broken right ankle, a dislocated left hip, and a fractured

---

[1]The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

pelvis. (Tr. 120.) Plaintiff's application was denied both initially and upon reconsideration. (Tr. 52; 56; 62; 65.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 8; 73.) The ALJ conducted the *de novo* administrative hearing in Dallas, Texas on November 3, 2008. (Tr. 8.) Plaintiff appeared at the hearing with a representative and testified. (Tr. 8.) A vocational expert ("VE") also testified. (Tr. 8.)

On December 1, 2008, the ALJ issued her decision finding Plaintiff "not disabled." (Tr. 14.) Plaintiff requested and was denied review of the ALJ's decision by the Appeals Council. (Tr. 1; 4.) Plaintiff filed this case on July 10, 2009, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). (Doc. 1.) This matter is ripe for consideration on the merits.

### *B. Factual History*

#### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is June 17, 1987 (Tr. 21.) Plaintiff did not complete high school and has not obtained a GED. (Tr. 21-22.) He has no other specialized training or education. (Tr. 22.) At the time of the hearing, Plaintiff was twenty-one years old and had no past relevant work. (Tr. 21; 36.)

#### 2. Plaintiff's Medical Evidence

On December 12, 2006, Plaintiff was admitted to Presbyterian Hospital of Greenville for injuries suffered when he reportedly fell from a moving vehicle. (Tr. 159.) The emergency treatment providers noted head injury, subdural hematoma, dislocated left hip, left acetabular fracture, ankle fracture, traumatic hemorrhage, and alcohol intoxication. (Tr. 171.) Plaintiff was later transferred to Parkland Memorial Hospital for further treatment. (Tr. 173.) On December 12, 2006, he underwent an open reduction internal fixation bimalleolar ankle fracture and open reduction internal

fixation of syndesmosis. (Tr. 235.) He was discharged from the hospital on December 21, 2006. (Tr. 238.)

Plaintiff did not keep his scheduled follow-up appointment on December 28, 2006 (Tr. 248.) On January 18, 2007, Plaintiff went to the emergency room complaining that his ankle splint was coming apart. (Tr. 194.) He was given pain medication and told to keep his leg elevated, not to bear any weight on the ankle, and to follow up with his orthopedic surgeon. (Tr. 198.) Plaintiff did not keep his scheduled follow-up appointments on February 1, 2007, February 8, 2007, or March 1, 2007. (Tr. 252-54.) Plaintiff had a follow up appointment with his orthopedic surgeon on March 15, 2007. (Tr. 251.) The doctor's clinical impression was right ankle fracture status post fixation or medial malleolar and distal fibular fractures, with syndesmotic screw. (Tr. 251.)

On June 6, 2007, Plaintiff saw Dr. Ron Jones for a consultative orthopedic evaluation. (Tr. 285.) He complained to Dr. Jones of pain in his right ankle and left hip when walking or standing for any length of time. (Tr. 285.) He also complained of low back pain. (Tr. 285.) After a systems review and physical examination, Dr. Jones noted that the range of motion of most joints appeared to be within normal limits. (Tr. 287.) He also noted decreased range of motion in the right ankle, no evidence of arthritic nodules or digital deformity, normal range of motion of the back and neck, equal and adequate deep tendon reflexes, no significant tenderness to palpitation over any joint, no swelling, redness or increased heat of any joint, and guarded station and gait with a limp favoring the right side. (Tr. 287.) An x-ray of the right ankle revealed a status post right medial malleolus fracture with surgical screws that appeared to be in good position. (Tr. 287.) Dr. Jones further noted that Plaintiff showed no significant impairment in his ability to reason or make occupational, personal, or social adjustments. (Tr. 287.) He noted that Plaintiff appeared to have no restrictions

3

on daily activities, no constriction of interests or grooming, and no inability to relate to other people. (Tr. 287.)

Plaintiff underwent a psychological evaluation on May 29, 2007. (Tr. 278.) After taking Plaintiff's medical history and performing a clinical interview and mental status examination, the doctor administered IQ testing. (Tr. 278-81.) The consultative examining psychologist opined that Plaintiff has a Verbal IQ score of 83, Performance Scale IQ score of 85, and Full-Scale IQ score of 83. (Tr. 280.) Plaintiff's Global Assessment of Functioning ("GAF") is 75. (Tr. 281.) The psychologist noted that Plaintiff ambulated with a marked impairment of gait but could do so without assistance. (Tr. 279.) She reported that the results of the assessment provided no substantial evidence of a cognitive disorder. (Tr. 281.)

Finally, Plaintiff was seen at Greenville Community Health Center on June 17, 2007 for sharp leg pain. (Tr. 315.) He rated the severity of pain as an eight on a scale of one to ten. (Tr. 315.) He reported that movement made the pain worse. (Tr. 315.) He was given pain medication. (Tr. 316.) The treating doctor noted that "the level of diagnoses or management option of this case is multiple" and that "the level of amount and/or complexity of data to be reviewed is moderate." (Tr. 316.) Plaintiff was advised to return in four to six months for a follow-up. (Tr. 316.)

### 3. Plaintiff's Hearing

Plaintiff was represented by counsel at the November 3, 2008 hearing. (Tr. 19.) After the ALJ admitted the exhibits into the record, Plaintiff testified (Tr. 21-35.) Plaintiff testified that he sustained his injuries after a car, backing down the road, ran over him. (Tr. 22.) He stated that he did not fall or jump out of a moving vehicle. (Tr. 22.) He sustained injuries to his right ankle, left hip, left shoulder, right hand, and back. (Tr. 22.) He is right-handed. (Tr. 23.) His right hand locks up

4

sometimes, and he has difficulty picking up heavy things. (Tr. 23.) He cannot carry a gallon of milk with his left arm, but he can hold a gallon of milk with his right hand. (Tr. 23.) He can pick up small objects and button his shirt. (Tr. 23.) He has trouble gripping larger objects, such as a cup, with his right hand. (Tr. 24.) He is unable to lift his left arm above his head because it frequently pops out of socket. (Tr. 24.) He is unable to lift any weight over his head with his left arm. (Tr. 25.) He is able to extend his arms out in from of him for a period of five to ten minutes at a time. (Tr. 25.)

Plaintiff then testified about his back pain. (Tr. 26.) He stated that he can sit for a period of fifteen to twenty minutes before he has pain and discomfort. (Tr. 26.) After sitting for that amount of time, he needs to get up and move around for five to ten minutes. (Tr. 26.) His left hip is still fractured and painful to put weight on. (Tr. 27.) The hip pops out of socket and causes him to fall on occasion. (Tr. 27.) He was told by Parkland Hospital that he would need operations, but he is unable to afford them. (Tr. 27.) He does not have medical insurance and is not on Medicaid. (Tr. 27.) He is currently not receiving any rehabilitation treatment. (Tr. 28.) He can stand for a period of only fifteen to twenty minutes without having to sit down due to pain. (Tr. 28.)

Plaintiff then testified about his right ankle. (Tr. 28.) He stated that it is stiff in the morning and that it cramps up and starts swelling once he starts to move it around. (Tr. 28.) He feels sharp pain with every step he takes. (Tr. 28.) He is not on medication because he cannot afford to see a doctor. (Tr. 28.)

He testified that he has not worked since the accident. (Tr. 28.) He helps his niece and nephew get ready for school and helps his sister with the dishes. (Tr. 29.) He spends his days watching videos on the computer. (Tr. 29.) Once, he filled in a small hole under the fence outside. (Tr. 30.)

5

Plaintiff also testified that he was hit in the head in the accident and lost consciousness. (Tr. 30.) He now experiences bad headaches and a high-pitched ringing in his head. (Tr. 31.) He occasionally has trouble with his memory. (Tr. 31.) He lives with his sister. (Tr. 32.) Although he has a current driver's license and can drive, he does not usually do so. (Tr. 32.) He does not go out with friends, and friends do not visit him during the day. (Tr. 32.)

Next, the ALJ examined Plaintiff. (Tr. 32.) Plaintiff stated that he dropped out of school in the eleventh grade and does not have a GED. (Tr. 33.) He denied jumping out of a moving vehicle. (Tr. 33.) He stated that he cannot type with his right hand because his pinky cramps up. (Tr. 35.) The movement in his right hand is limited, especially in his ring and pinky fingers. (Tr. 35.)

Then, the ALJ examined the VE. (Tr. 35.) The ALJ first asked the VE if there is any work an individual with the same age, education, and work history as Plaintiff can perform if that individual retains the residual functional capacity ("RFC") to occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand or walk six hours in an eight-hour day, and sit six hours in an eight-hour day and has unlimited ability to push and pull. (Tr. 36.) The VE testified that such individual could work as a burlap spreader for hat and caps (medium, SVP of 1), a drying oven attendant (medium, SVP of 1), a change person (medium, SVP of 2), and a package handler (medium, SVP of 2). (Tr. 36-39.) The VE also gave the number of jobs for each position in the relevant region and in the nation. (Tr. 36-39.) The ALJ then asked the VE to consider an individual with: (1) the same age, education, and work history as Plaintiff; (2) the residual functional capacity ("RFC") to occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk six hours in an eight-hour day, and sit six hours in an eight-hour day; (3) handling, fingering, and feeling limitations on the right side; and (4) restrictions limiting his work to that which does not

6

demand the use of the hands for fine and dexterous manipulations. (Tr. 40.) The VE testified that such individual could perform the work of a flagger (light, SVP of 2) and an order caller (light, SVP of 2). (Tr. 40-42.) The VE also gave the number of jobs such positions have in the relevant region and in the nation. (Tr. 40-42.) The ALJ then inquired as to whether the jobs the VE identified are consistent with the jobs as described in the Dictionary of Occupational Titles ("DOT"), and the VE replied that they are. (Tr. 42.)

Finally, Plaintiff's counsel examined the VE. (Tr. 42.) The VE testified that the position of flagger does not require the worker to lift his arms over his head. (Tr. 42.) He further testified that a flagger could not sit every ten to fifteen minutes throughout the workday. (Tr. 43.) She stated that an individual who was unable to report to work an average of two times per month due to a medical impairment would not be competitively employable. (Tr. 43.)

### C. ALJ's Findings

First, the ALJ found that Plaintiff attained age twenty-two on June 16, 2009, the day before his twenty-second birthday. (Tr. 10.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 12, 2006, the alleged disability onset date. (Tr. 10.) Third, the ALJ found that, since December 12, 2006, Plaintiff has had the following severe impairments: right ankle fracture and status post-hip dislocation. (Tr. 10.) The ALJ also found Plaintiff's medically determinable mental impairment to be nonsevere. (Tr. 11). Fourth, she found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I. (Tr. 11.) Fifth, the ALJ found that Plaintiff has the RFC to perform light work limited to only occasional handling and fingering of the right hand and is further restricted to work that does not demand the use of hands for fine and dexterous

manipulations. (Tr. 11.) In making the RFC determination, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not credible due to inconsistencies. (Tr. 13.) Sixth, the ALJ found that the Plaintiff has no past relevant work. (Tr. 13.) Seventh, the ALJ found that Plaintiff is a younger individual age 18-44, has a limited education, and is able to communicate in English. (Tr. 13.) Eighth, she found that transferability of job skills is not an issue. (Tr. 13.) Ninth, the ALJ found that, since December 12, 2006, considering Plaintiff's age, education, work experience, and RFC, Plaintiff has been able to perform jobs that exist in significant numbers in the national economy. (Tr. 13.) She noted that the VE's testimony was consistent with the information contained in the DOT. (Tr. 14.) Finally, the ALJ found that Plaintiff has not been under disability as defined by the Act since December 12, 2006. (Tr. 14.)

## II. ANALYSIS

### A. *Standard of Review*

A claimant must prove that he is disabled for purposes of the Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically- determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove his disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment but, rather, scrutinizes the record

to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

## B. Issues for Review

Plaintiff argues that (1) the ALJ committed legal error in finding Plaintiff's hand impairment not severe; (2) the ALJ's RFC determination is not supported by substantial evidence; and (3) the ALJ erred in finding that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy. For the following reasons, the Court finds that the Commissioner's decision should be REVERSED and REMANDED.

## C. Substantial Evidence

Plaintiff first contends that the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff argues that the additional limitations placed upon Plaintiff's RFC are inconsistent with each other and that the RFC fails to accommodate for Plaintiff's severe impairments.

Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. In the instant case, the ALJ determined that Plaintiff has the RFC to do light work with the following additional limitations: (1) the ability to handle and finger with his right hand on no more than an occasional basis; and (2) the inability to do work that demands the use of either hand for fine and dexterous manipulations. In so finding, the ALJ found Plaintiff's testimony to be not credible due to inconsistencies. The Court finds that substantial evidence supports the ALJ's determination.

Plaintiff argues that the ALJ's determination that Plaintiff can perform occasional handling

and fingering with his right hand is inconsistent with the finding that Plaintiff cannot perform work that demands the use of either hand for fine and dexterous manipulation. Even assuming the two limitations are inconsistent, Plaintiff suffered no prejudice from this error. The second limitation merely places more limitations upon the first. The ALJ submitted both limitations to the VE, who took them into account when testifying. The jobs the VE opined about took into account the more severe restriction for fine and dexterous manipulations. These more severe restrictions narrowed rather than broadened the range of jobs Plaintiff could perform.

Plaintiff also argues that the RFC does not take into account his severe impairments. This is essentially an argument that the ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence. The court finds substantial evidence supports the ALJ's determination. The medical records show that Plaintiff had normal range of motion in his leg, knee, thigh, ankle, and extremities on January 18, 2007. (Tr. 192.) Plaintiff ambulates independently. (Tr. 196.) In March 2007, Plaintiff reported that his ankle was "doing fine." (Tr. 256.) During the psychological evaluation in May 2007, the doctor noted that Plaintiff performed his dress and hygiene independently and performed light duty household chores. (Tr. 279.) The doctor who performed the physical consultative examination noted that Plaintiff's impairments did not objectively limit his ability to sit, stand, walk, lift, carry, or handle objects. (Tr. 287.) Although Plaintiff complains of severe pain, he failed to show up for many follow-up appointments with his orthopedic surgeon and does not take any pain medication. (Tr. 248-54.) Moreover, he is not currently undergoing any medical treatment or rehabilitation. (Tr. 27-28.) *See Villa v Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (holding that the lack medical treatment may be considered by the ALJ in evaluating a claimant's condition). Plaintiff contends that he cannot afford medical treatment,

but he provided no evidence that he unsuccessfully attempted to obtain additional medical attention. *See* SSR 82-59, 1982 WL 31384, at *4 (1982) ("[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.) must be explored"). Accordingly, substantial evidence supports the ALJ's determination of Plaintiff's RFC.

### D. Step 5 of the Sequential Evaluation

Plaintiff contends that the ALJ erred in finding that Plaintiff retains the ability to perform other work because the VE's testimony conflicts with the DOT. Defendant argues that although there may be a conflict, the ALJ is entitled to rely upon a VE's testimony provided that the record reflects an adequate basis to do so.

Defendant is correct that the DOT does not automatically trump a VE's conflicting opinion. In appropriate cases, the ALJ may give greater weight to VE testimony than to findings in the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). When a conflict is implied or indirect and did not undergo adversarial development at the administrative hearing, the testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so. *Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009) (citing *Carey*, 230 F.3d at 146). However, when a "direct and obvious conflict" exists between the VE's testimony and the DOT and the ALJ fails to explain or resolve the conflict, the testimony is "so lessened that reversal and remand for lack of substantial evidence usually follows." *Carey*, 230 F.3d at 146; *see also Gaspard*, 609 F. Supp.2d at 613 (E.D. Tex. 2009); *Baty v. Barnhart*, 512 F. Supp.2d 881, 893-94 (W.D. Tex. 2007); *Graham v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2133-N, 2009 WL 3199382, at *8 (N.D. Tex. Oct. 2, 2009); *Washington v. Astrue*, No. 3:07-CV-1768-G, 2008 WL 4921675, at *6 (N.D. Tex. Nov. 14, 2008); *Lopez v. Astrue*, No. 5:07-CV-169-C, 2008 WL 1820584,

12

at *4-5 (N.D. Tex. Apr. 23, 2008). A direct and obvious conflict exists when the VE's "characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill provided for that job in the DOT." *Carey*, 230 F.3d at 145.

Here, the ALJ found that Plaintiff retained the ability to perform other work existing in significant numbers in the national economy. Specifically, the ALJ found that Plaintiff retained the ability to work as a "flagger" and an "order caller." Because she found that Plaintiff could not perform a full range of light work, the ALJ was required to rely on VE testimony to meet her burden of proof. *See Masterson v. Barnhart*, 309 F.3d 267. 271-72 (5th Cir. 2002) (the burden shifts to the Commissioner at step five of the sequential evaluation).

The VE testified that a person of Plaintiff's age, educational and work background, having an RFC for light work, limited by the ability to handle and finger with the right hand occasionally, and an inability to use his hands for fine and dexterous manipulations could perform the jobs of "flagger" and "order caller." The ALJ asked the VE at the hearing if her testimony was consistent with the DOT, and the VE replied that it was. (Tr. 42.) However, the DOT states that the job of "flagger" requires frequent handling and occasional fingering. DICOT 372.667-022, 1991 WL 673097 (1991). The job of "order caller," according to the DOT, requires frequent handling and frequent fingering. DICOT 209.667-014, 1991 WL 671807 (1991). The VE's testimony is facially different from the DOT and is therefore a direct and obvious conflict. Moreover, the ALJ failed to resolve this conflict in his decision. Therefore, substantial evidence does not support the ALJ's decision.

Defendant argues that Plaintiff cannot present the conflict between the VE's testimony and the DOT as reversible error because Plaintiff's attorney representative failed to raise the alleged

13

conflict with the VE at the hearing. The Defendant relies on *Carey*, which held that "a claimant should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146-47. However, *Carey*'s ruling was limited to indirect or implied conflicts. *See Baty*, 512 F. Supp. 2d at 893-94; *Graham*, 2009 WL 3199382, at *8; *Washington*, 2008 WL 4921675, at *6; *Lopez*, 2008 WL 1820584, at *4-5. In this case, the conflict is facial and apparent. Therefore, Defendant's argument is without merit. *See Romine v. Banhart*, 454 F. Supp. 2d 623, 629-30 (E.D. Tex. 2006).

For the foregoing reasons, the Court finds that the case should be reversed and remanded for reconsideration. The Court also notes that there is a question as to whether the ALJ committed legal error by failing to apply the correct severity standard when evaluating Plaintiff's hand impairment. The ALJ did not specifically make a finding as to whether the hand impairment was severe or not severe but did include significant limitations on Plaintiff's RFC due to the hand impairment. The Court does not make specific findings as whether this constitutes reversible error at this time. However, the ALJ should consider making a specific determination as to whether the hand impairment was severe or not severe upon remand.

### III. CONCLUSION

For the foregoing reasons, the Court hereby orders the Commissioner's decision be

REVERSED and REMANDED for reconsideration.

SO ORDERED, January 6, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and

recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).